UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KYLE PETERSEN | No. 3:16-cr-109 (SRU) |

## ORDER

Kyle Petersen is a federal inmate currently serving a 10-year mandatory minimum sentence for conspiracy to distribute, and to possess with intent to distribute, 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  *See* Indictment, Doc. No. 18; Min. Entry, Doc. No. 192; Plea Agreement, Doc. No. 193;[1] Judgment, Doc. No. 293. Petersen is currently housed at the Federal Correctional Institution, Danbury ("FCI Danbury"). *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 21, 2021).  Petersen's scheduled release date is November 24, 2024.  *See id.*  Petersen has been incarcerated since May 2016;[2] Petersen has thus served approximately half of his sentence.

Petersen has made a motion for reconsideration of my prior order denying his motion for release.  *See* Mot. for Reconsideration, Doc. No. 396.  For the following reasons, Petersen's motion is **denied**.

### I.     Procedural History

On September 10, 2020, Petersen (through counsel) filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act.

---

[1] In pleading guilty, Petersen stipulated that the quantity of fentanyl involved in this case was 2.5 kilograms.  *See* Plea Agreement, Doc. No. 193, at 3; PSR, Doc. No. 253, at ¶ 19.

[2] *See* PSR, Doc. No. 253, at 1 ("Mr. Petersen has remained detained at the Donald W. Wyatt Detention Center located in Central Falls, Rhode Island since his arrest on May 19, 2016.").

*See* Mot. for Release, Doc. No. 387.  On December 3, 2020, I denied Petersen's motion.  *See* Order, Doc. No. 394; *United States v. Petersen*, 2020 WL 7129705 (D. Conn. Dec. 3, 2020).  In doing so, I explained the legal framework guiding my decision, recounted the background of this case, and addressed the parties' arguments.  *See* Order, Doc. No. 394, at 2–13.  Ultimately, I concluded:

> I will not reduce Petersen's sentence for two, independent reasons.  First, Petersen has not shown that extraordinary and compelling reasons warrant his release.  And, second, reducing Petersen's sentence would not comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

*Id.* at 13.

With respect to "extraordinary and compelling reasons," I acknowledged that "those—like Petersen—who suffer from hypertension may be at an increased risk for severe illness from COVID-19."  *Id.*  However, I held that two considerations pulled in the opposite direction.  First, the spread of COVID-19 at FCI Danbury—where Petersen was, and still is, housed—was under control, with seven positive cases at the facility.  *See id.* at 14.  Second, I noted that "several courts have denied inmates' motions for compassionate release when the inmates' only asserted health condition is hypertension and the inmate has failed to show that the BOP's treatment was in some way inadequate."  *Id.* at 15 (citing cases).  For those reasons, I held that "[o]n the facts of this case, Petersen's hypertension alone, without more, does not constitute an extraordinary and compelling reason warranting his release."  *Id.* at 15.

With respect to the section 3553(a) factors, I explained that "reducing Petersen's sentence to the time he has already served would not result in a sentence sufficient to achieve the purposes of sentencing."  *Id.* at 16.  I mentioned that Petersen's conduct—most egregiously, dealing large quantities of fentanyl—was extremely serious and that the "seriousness of Petersen's conduct has not changed since I sentenced him in 2017."  *Id.*  In fact, I noted that "the drug overdose crisis in

this state has become more dire," with 1,200 individuals dying in 2019 from accidental drug overdoses and 979 of those deaths involving fentanyl. *Id.* (citing *Statistics*, OFFICE OF THE CHIEF MED. EXAMINER, https://portal.ct.gov/OCME/Statistics (last visited Jan. 21, 2021) (navigate to the .pdf document entitled "Calendar Years 2012 to June 2020 Accidental Drug Intoxication")). Although I did not claim that "Petersen is in any way linked to those deaths," I remarked that "Petersen helped grow the market for fentanyl in Connecticut," and that "market is now booming." *Id.*

I also explained that reducing Petersen's sentence would "neither provide Petersen with adequate deterrence nor adequately protect the public from further of Petersen's crimes." *Id.* at 17. That was because Petersen had engaged in the criminal conduct underlying this case "while facing a potential three-year sentence for a conviction in state court." *Id.* Similarly, I reasoned, "Petersen may not be deterred by the possibility of the years of incarceration he would face if he violated the terms of his supervised release." *Id.* Further, I remarked that Petersen repeatedly mentioned in his presentence interview that "he dealt drugs for money because he felt pressure to support himself and several of his family members financially." *Id.* "Given COVID-19's devastating effect on the economy," I posited that "that pressure might now be even greater." *Id.*

Finally, I noted the promising aspects of Petersen's personal history and his troubled upbringing. But, I explained, I had already "considered all of that information when crafting an appropriate sentence." *Id.* I also acknowledged that Petersen had an excellent BOP disciplinary record. Again, though, I held that Petersen's progress was "not enough to outweigh the seriousness of this offense, the need to deter Petersen from committing further crimes, and the need to protect the public." *Id.*

**II.    Discussion**

A.      Parties' Arguments

On January 4, 2021, Petersen made a motion (through counsel) asking me "to reconsider his request [for] compassionate release." Mot. for Reconsideration, Doc. No. 396, at 1. Petersen argues that his "immediate release" is justified by "(a) the growing COVID-19 pandemic, which continues to worsen at [FCI Danbury], (b) Mr. Petersen's hypertension, and (c) the § 3553(a) factors as applied in his case." Mem. in Supp. Mot. for Reconsideration, Doc. No. 396-1, at 1. Petersen argues that, when I denied his first request for release, I "looked at the COVID-19 case count at FCI Danbury." *Id.* at 2. Petersen points out that I "specifically noted[] the spread of COVID-19 at FCI Danbury was under control" because there were just seven positive cases there at that time. *Id.* At the time of filing (Jan. 4, 2021), Petersen reports that FCI Danbury had 29 positive cases (28 inmates). *See id.* at 2–3. Petersen argues that I should release him based on that increase—plus his worsening hypertension.[3] *See id.* at 3.

On January 11, 2021, the government filed an opposition. With respect to the COVID count at FCI Danbury, the government admits that "there was a recent outbreak at FCI Danbury from December 2020 into January 2021." Gov't Opp'n, Doc. No. 397, at 3. However, as of the date of the government's submission, FCI Danbury had just four positive cases (three inmates). *See id.* Thus, the situation at FCI Danbury is now under control. In addition, inmate inoculations have begun at FCI Danbury: Already 15 percent of the inmate population have been offered the first dose of a vaccination (unfortunately, nearly 40 percent of those inmates

---

[3] According to Petersen, his "prescription dosage to treat this condition has been doubled" since I ruled on his first motion for release. *See* Mem. in Supp. Mot. for Reconsideration, Doc. No. 396-1, at 3. But Petersen is mistaken: As discussed below, that dosage increase actually occurred *before* I ruled on Petersen's first motion for release in early December 2020, and Petersen had brought it to my attention. *See* Order, Doc. No. 394, at 10 & n.5; BOP Med. Records, Doc. No. 392-2, at 2 (indicating that, as of Aug. 25, 2020, Petersen was prescribed 12.5 mg/day of Carvedilol for his hypertension); BOP Med. Records, Doc. No. 401, at 12 (indicating that, as of Nov. 1, 2020, Petersen was prescribed 25 mg/day of Carvedilol); Prescription Label, Doc. No. 402 (indicating the same, as of Nov. 23, 2020).

4

offered the shot declined it).  *See id.* at 3–4.  Petersen has not yet been offered the vaccine.  *See id.* at 4.  However, in the government's view, it is likely that the risk of a further outbreak at FCI Danbury is shrinking daily.

Regarding Petersen's hypertension, the government correctly points out that Petersen's hypertension worsened—and his prescription dosage doubled—*before* I ruled on his first motion for release.  *See supra* n.3; Gov't Opp'n, Doc. No. 397, at 2 (noting that Petersen's dosage of Carvedilol doubled (from 12.5 mg/day to 25 mg/day) on Sept. 25, 2020); Petersen's Reply, Doc. No. 390, at 1 (reporting that dosage doubling to me on Oct. 2, 2020).  In my ruling denying Petersen's motion for release, I noted that I was "unable to corroborate Petersen's claim" regarding the dosage doubling because Petersen did not submit any medical records later than August 25, 2020, which is when he was initially prescribed Carvedilol.  *See* Order, Doc. No. 394, at 10 & n.5.  The government does not address the section 3553(a) sentencing factors.

On January 12, 2021, Petersen filed a reply.  In that reply, Petersen acknowledges that the COVID-19 positive case count at FCI Danbury has declined.  *See* Reply, Doc. No. 398, at 1.  (In fact, as of the date of Petersen's reply, the positive case count had dropped to just two inmates.  *See id.*)  However, Petersen argues that the positive case count can rise quickly again at any time.  *See id.*  Petersen again does not discuss the section 3553(a) sentencing factors.

      B.     <u>Discussion</u>

Although Petersen presents his motion as one for "reconsideration," in my view, it is not properly before me as a motion for reconsideration.  Motions for reconsideration may be filed in criminal cases.  *See United States v. Clark,* 984 F.2d 31, 33–34 (2d Cir. 1993) (recognizing that a post-judgment motion for reconsideration can be filed in a criminal case so long as it is timely filed); D. Conn. L. Cr. R. 1(c) (explaining that D. Conn. L. Civ. R. 7(c) shall apply in criminal

proceedings); *United States v. Reyes*, 2013 WL 789735, at *1 (D. Conn. Mar. 4, 2013). Pursuant to D. Conn. L. Civ. R. 7(c), a motion for reconsideration must be "filed and served within seven (7) days of the filing of the decision or order from which such relief is sought." Petersen's motion for "reconsideration" was filed on January 4, 2021. That was 32 days after my order denying his first motion for release.

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (cleaned up).

Petersen's motion is not properly before me as a motion for reconsideration both because it is too late and because it does not point to any controlling decisions or data that I overlooked. Instead, the major grounds for Petersen's motion are developments that (he says) have taken place between the date of my prior order (December 3, 2020) and the date of Petersen's motion (January 4, 2021). More specifically, Petersen relies on (1) the increased COVID-19 case count at FCI Danbury and (2) his worsening hypertension. Even though Petersen's motion is improper

as a motion for reconsideration, I will consider his motion on the merits as a renewed motion for release.

I deny Petersen's renewed motion for release again for two, independent reasons: (1) Petersen still has not established that "extraordinary and compelling reasons" warrant his release, and (2) reducing Petersen's sentence to the time he has already served would result in a sentence insufficient to serve the purposes of sentencing, as set forth in section 3553(a).

Regarding (1), neither the COVID situation at FCI Danbury nor Petersen's worsening hypertension amounts to an "extraordinary and compelling" reason warranting his release. At the time Petersen filed the instant renewed motion, FCI Danbury was experiencing a spike in COVID cases: 29 individuals (28 inmates) were testing positive. More recently, though, the spike has subsided: Today (Jan. 21, 2021), two individuals are testing positive (both inmates). *See COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 21, 2021). At the time I considered Petersen's first motion for release, seven individuals at FCI Danbury were testing positive, and I noted that that number indicated that "the spread of COVID-19 at FCI Danbury is currently under control." Order, Doc. No. 394, at 14. Although FCI Danbury did suffer a small outbreak recently, it appears again as though the situation at FCI Danbury is under control. Thus, the COVID-19 case count at FCI Danbury does not establish an "extraordinary and compelling" reason warranting Petersen's release.

Petersen's hypertension also does not amount to an "extraordinary and compelling" reason warranting his release. I have already explained why, on the facts of this case, Petersen's hypertension is not enough, alone, to establish an "extraordinary and compelling" reason warranting his release. *See* Order, Doc. No. 394, at 13–15 & n.7 (pointing out that Petersen has essential, not pulmonary, hypertension, and citing cases in which courts have "denied inmates'

7

motions for compassionate release when the inmates' only asserted health condition is hypertension and the inmate has failed to show that the BOP's treatment was in some way inadequate"). In addition, although Petersen argues that his prescription dosage to treat his hypertension has recently doubled, I have already explained that that dosage doubling occurred *before* I denied Petersen's first motion for release (and I was aware of it). In any event, even if the dosage doubling were a "new" fact,[4] Petersen's hypertension still would not amount to an "extraordinary and compelling" reason warranting his release  *See United States v. Hicks*, 2021 WL 51398, at *2–3 (E.D. Mich. Jan. 6, 2021) (holding that inmate's essential hypertension, treated with 20 mg of Lisinopril daily, did not rise to the level of an "extraordinary or compelling" reason warranting release); *cf. United States v. Iron Thunder*, 2020 WL 6940503, at *1 (D. Neb. Nov. 25, 2020) (declining, based on section 3553(a) factors, to release inmate taking 25 mg/day of Carvedilol). Thus, I hold that Petersen has still not established "extraordinary and compelling reasons" warranting his release.

Regarding (2), Petersen does not even address the section 3553(a) factors in his renewed motion. Just over one month ago, I held that consideration of the section 3553(a) factors precluded me from granting Petersen's first motion for release. *See* Order, Doc. No. 394, at 15–17. Nothing has changed with respect to my consideration of the section 3553(a) factors: They still provide an independent reason why I will not grant Petersen's renewed motion for release.

**III.    Conclusion**

---

[4] As noted above, in my order denying Petersen's first motion for release, I commented that I was "unable to corroborate" Petersen's claim because Petersen submitted no confirmatory medical record. *See* Order, Doc. No. 394, at 10 n.5.

8

For the foregoing reasons, Petersen's motion for reconsideration, doc. no. 396, is **denied**. Petersen's motions to seal his prescription label and his medical records, doc. nos. 399 and 400, at **granted**.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 21st day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge